UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC KERSH,

        Plaintiff,

v.                                           Case No. 14-14478
                                             Honorable Denise Page Hood

CIERE FREEMON TURNER,

        Defendant.
_____/

**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT**

Before the Court is Plaintiff's Motion for Default Judgment. **[Docket No. 7, filed May 27, 2015]**. On February 26, 2015, the Clerk entered Default against Ciere Freemon Turner ("Defendant"). **[Docket No. 5]**. For the reasons discussed below, Plaintiff's Motion for Default Judgment is **GRANTED**.

**I.    BACKGROUND**

Plaintiff seeks to collect $75,000 in damages arising out of Defendant's alleged assault and battery of and use of excessive force against Plaintiff on December 11, 2012. On that day, Defendant was on duty as a Bailiff for the 36th District Court and was scheduled to conduct a re-eviction of the home at 20400 Manor, Detroit, MI. Plaintiff and his girlfriend were residing in the home at that time. Plaintiff claims he

1

heard a banging noise on the front door and came down the stairs to investigate. Plaintiff then encountered Defendant, who had entered the premises and Plaintiff believed was attempting to break into the home illegally. Defendant drew his gun and shot Plaintiff in the leg. Plaintiff claims that Defendant fired his gun at Plaintiff merely because Defendant was startled. Defendant, on the other hand, claims that Plaintiff charged down the stairs at him.

Plaintiff filed a Complaint regarding this matter on November 24, 2014. **[Docket No. 1]**. On January 23, 2015, Plaintiff left a copy of the Summons and Complaint with a male, appearing to be 20-27 years old, at Defendant's address,[1] pursuant to Federal Rule of Civil Procedure ("FRCP") 4(e)(2)(b). **[Docket No. 3, filed February 18, 2015]**. On February 26, 2015, having received no responsive pleading from Defendant, Plaintiff requested that the Clerk enter Default against Defendant. **[Docket No. 4]**. That same day, the Clerk entered Default against Defendant pursuant

---

[1] Service was made at 19125 Kingston Road, Detroit, MI 48221 ("Kingston Address"). **[Docket No. 3]**. After making service, Plaintiff confirmed through a postal check that the Kingston Address was Defendant's last known address. The postal check indicated that Defendant had moved and left no forwarding address (Pl.'s Mot. for Default J., Ex. E, "Request for Change of Address or Boxholder Information Needed for Service of Legal Process" at p.1), but a LexisNexis person-locator search conducted by Plaintiff indicated that as of June 23, 2015 the Kingston Address was listed on Defendant's current driver's license and voter registration. **[Docket No. 11, filed June 24, 2015]**. Plaintiff also mailed a copy of his Motion for Default Judgment to the Kingston Address, and it was not returned as undeliverable.

to FRCP 55(a). **[Docket No. 5]**.

## II. ANALYSIS

An Entry of Default under FRCP 55 is the first procedural step necessary to obtain a default judgment. *Shepard Claims Serv. Inc. v. Williams Darrah & Assoc.*, 796 F.2d 190, 193 (6th Cir. 1986). "When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). The party must then apply to the Court for entry of the default judgment. Fed. R. Civ. P. 55(b)(2). The Court may enter default judgment "[a]gainst a minor or incompetent only if represented by a general guardian, conservator, or other like fiduciary who has appeared." Fed. R. Civ. P. 55(b)(2). The Court may conduct an accounting, determine the amount of damages, establish the truth of any allegations by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2).

The Clerk made an Entry of Default in this case on February 26, 2015. **[Docket No. 5]**. The Clerk's Entry appears not to be in error, as Plaintiff's counsel's affidavit states that Defendant failed to plead or otherwise defend in accordance with FRCP 12. **[Docket No. 4, filed February 26, 2015]**; *see* Fed. R. Civ. P. 12(a)(1)(A)(i) (stating that a Defendant must serve an answer "within 21 days after being served with the summons and complaint"). The affidavit also affirms that Defendant is not a minor,

incompetent person, or a member of the military service. **[Docket No. 4, filed February 26, 2015]**.

Plaintiff now seeks Default Judgment in the amount of $75,000 for Defendant's alleged use of excessive force against Plaintiff, pursuant to 42 U.S.C. § 1983, and Defendant's assault and battery of Plaintiff.

**A. Liability for Excessive Force Claim**

Plaintiff seeks relief for Defendant's alleged use of excessive force against Plaintiff pursuant to 42 U.S.C. § 1983. To prove a claim under 42 U.S.C § 1983, a plaintiff must establish (1) a violation of an existing constitutional right (2) by a person acting under color of state law. *Flagg Bros. v. Brooks*, 436 U.S. 149, 155 (1978).

Plaintiff argues that Defendant's alleged use of excessive force against Plaintiff violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures. In *Graham v. Connor*, the Supreme Court held that "[a]ll claims that law enforcement officers have used force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard . . . ." 490 U.S. 386, 395 (1989).

To make out an excessive force claim under the Fourth Amendment, Plaintiff must first establish that an arrest, booking, or some other type of seizure took place.

*See Graham*, 490 U.S. at 394; *see also Cameron v. City of Pontiac*, 813 F.2d 782, 785 (6th Cir. 1987) ("[A]bsent an actual physical restraint or physical seizure, the alleged unreasonableness of the officers' conduct cannot serve as a basis for a § 1983 cause of action anchored in the Fourth Amendment."). A seizure "requires *either* physical force...*or*, where that is absent, *submission* to the assertion of authority." *California v. Hodari*, 499 U.S. 621, 626 (1991); *see also Floyd v. City of Detroit*, 518 F.3d 398, 406 (6th Cir. 2008) (quoting *Peete v. Metro. Gov't of Nashville & Davidson County*, 486 F.3d 217, 220 (6th Cir. 2007)) (defining a seizure as "an intentional interference with a person's liberty by physical force or a show of authority that would cause a reasonable person consciously to submit.") (internal quotation marks omitted). In *Floyd*, the Sixth Circuit held that an officer's gunshot, which struck a suspect in the chest, "clearly seized [the suspect] within the meaning of the Fourth Amendment." 518 F.3d at 406.

Next, Plaintiff must establish that the officer's use of force in effecting the seizure was objectively unreasonable. *See Graham*, 490 U.S. at 395; *Burgess v. Fischer*, 735 F.3d 462, 472 (6th Cir. 2013) (citing *Dunigan v. Noble*, 390 F.2d 486, 493 (6th Cir. 2004)). Courts must assess the reasonableness of the officer's action "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Three factors guide the reasonableness analysis: the severity of the crime, whether the suspect posed an immediate threat to the safety of the officers or others, and whether he was actively resisting arrest or attempting to evade arrest by flight. *See id.*; *see also Baker v. Union Twp.*, 587 F. App'x 229, 234 (6th Cir. 2014) (holding that an officer's use of a taser on a suspect was not objectively reasonable when the officer gave no warnings before firing, when the suspect was not fleeing, was standing at the top of an observable staircase, and was offering no resistance or indication of aggression); *Miller v. Sanilac County*, 606 F.3d 240, 253-254 (6th Cir. 2010) (holding that "a jury could reasonably find that slamming an arrestee into a vehicle constitutes excessive force when the offense is non-violent, the arrestee posed no immediate safety threat, and the arrestee had not attempted to escape and was not actively resisting.").

Finally, Plaintiff must establish that the alleged excessive force caused the Plaintiff's injuries. *See Cameron*, 813 F.2d at 784 (citing *Galas v. McKee*, 801 F.2d 200, 202 (6th Cir. 1986)) ("If a plaintiff has established that there had been a seizure and that the seizure had been unreasonable, he must support his claim by showing that the constitutional violation had proximately caused his injury.").

In this case, Defendant, a law enforcement officer, effected a seizure of Plaintiff. By shooting Plaintiff in the leg in order to subdue him, Defendant

6

intentionally deprived Plaintiff of his liberty by physical force. Defendant's actions in this regard are analogous to those of the officer in *Floyd*. *See Floyd*, 518 F.3d at 406.

Because Defendant effected a seizure of Plaintiff, Defendant's use of force must be evaluated according to the reasonableness analysis set out in *Graham*. None of the *Graham* factors suggests that Defendant's use of force was objectively reasonable. First, the crime to which Defendant officer was responding was not severe. Plaintiff was merely residing in a house unlawfully. The record contains no indication that Plaintiff was acting violently. On the contrary, Plaintiff testified that he was watching television with his girlfriend. Second, Plaintiff did not pose an immediate threat to Defendant's or anyone else's safety. Defendant claimed that Plaintiff charged down the staircase at him, but this claim is contradicted by Plaintiff's testimony as well as the account provided by Plaintiff's girlfriend (Pl.'s Mot. for Default J., Ex. F, "Detroit Police Dept. Arrest Report" at p.1). Third, at no point did Plaintiff resist Defendant. At a hearing on June 23, 2015, Plaintiff testified that he proceeded down the stairs to investigate a loud knocking sound when he discovered Defendant inside the home. Defendant, without warning, then fired his gun at Plaintiff. Under *Graham*, Defendant's shooting of Plaintiff in the leg was not objectively reasonable.

The record indicates plainly that Defendant's shooting Plaintiff was the

proximate cause of Plaintiff's wounds on his right leg (*Id.*, Ex. G, "Hospital Records").

Since Defendant, in the course of effecting a seizure of Plaintiff, used an objectively unreasonable degree of force which, in turn, caused Plaintiff's injury, Defendant violated Plaintiff's Fourth Amendment right to be free from unreasonable seizures.

There is little doubt in this case that Defendant was a person acting under color of state law during the incident. Defendant, as a Bailiff, falls within Michigan's definition of a "law enforcement officer." *See* Mich. Comp. Laws Ann. § 28.632 (West, Westlaw through 2015 Reg. Sess.). The Sixth Circuit has held that law enforcement officers, whether on duty or not, act under the color of state law when they "purport to exercise official authority." *Memphis, Tennessee Area Local, Am. Postal Workers Union, AFL-CIO v. City of Memphis*, 361 F.3d 898, 903 (6th Cir. 2004) (citing *Waters v. City of Morristown, TN*, 242 F.3d 353, 359 (6th Cir. 2001)).

In attempting to re-evict Plaintiff, Defendant purported to exercise his official authority as a Bailiff. Defendant was on duty as a Bailiff for the 36th District Court and was scheduled to re-evict Plaintiff from the home at 20400 Manor on the day the incident occurred. When Defendant reached the home and attempted to evict Plaintiff, Defendant was a person acting under the color of state law.

Since Defendant, a person acting under the color of state law, violated Plaintiff's Constitutional right to be free from unreasonable seizures, Defendant is liable under 42 U.S.C § 1983.

### B. Liability for Assault and Battery Claims

Under Michigan law, to prove an assault claim, a plaintiff must establish an "intentional unlawful offer of corporal injury to another person by force, or force unlawfully directed toward the person of another, under circumstances which create a well-founded apprehension of imminent contact, coupled with the apparent present ability to accomplish the contact." *Malory v. Whiting*, 489 Fed.Appx. 78, 86 (6th Cir. 2012) (quoting *VanVorous v. Burmeister*, 687 N.W.2d 132, 142 (Mich. Ct. App. 2004)) (internal quotation marks omitted).

To prove a claim for battery, a plaintiff must establish a "wilful and harmful or offensive touching of another person, which results from an act intended to cause such a contact." *Id.* (internal quotation marks omitted); *see also Tinkler v. Richter*, 295 N.W. 201, 203 (Mich. 1940) ("[A]s it is sometimes expressed, a battery is the consummation of the assault.") (citation and internal quotations omitted).

Because law enforcement officers are entitled to use reasonably necessary force to effect an arrest, proving an assault and battery claim against a law enforcement officer further requires a plaintiff to establish that the officer used *excessive* force. *See*

*Young v. Barker*, 405 N.W.2d 395, 402 (Mich. Ct. App. 1987). Specifically, a plaintiff must establish that the officer's use of force was objectively unreasonable. *See Landis v. Baker*, 297 F. App'x 453, 466 (6th Cir. 2008); *VanVorous*, 687 N.W.2d at 142. The reasonableness analysis "...is the same analysis that the court employs in determining a 42 U.S.C. § 1983 claim." *Landis*, 297 F. App'x at 466 (citing *Murry v. Yuchasz*, No. 268909, 2006 WL 3077462, at *2 (Mich. Ct. App. Oct. 31, 2006)).

Here, Defendant is liable for assault and battery. The record indicates that Defendant fired his gun at Plaintiff to injure and thereby subdue Plaintiff (Pl.'s Mot. for Default J., Ex. F, "Detroit Police Dept. Crime Report" at p.1). As such, Defendant made an intentional offer of corporal injury by force. Moreover, Defendant's use of force was unlawful because it was objectively unreasonable under *Graham*. *See supra* p. 7. Finally, Defendant's firing his gun at Plaintiff created in Plaintiff a well-founded apprehension of imminent contact and indicated Defendant's ability to accomplish the contact. Defendant is thus liable for assault. Defendant is also liable for battery because he not only made an intentional and unlawful *offer* of corporal injury by force but also caused a "harmful touching" of Plaintiff by shooting his gun at and actually striking Plaintiff.

The Court finds that Plaintiff has established Defendant's liability for assault, battery, and use of excessive force.

10

**C. Damages**

The Court must review whether Plaintiff's requested relief of $75,000 constitutes an appropriate amount of relief. *See* Fed. R. Civ. P. 55(b)(2). In his Complaint, Plaintiff alleged that he suffered pain, disability, and mental anguish as well as medical expenses for care, treatment, and rehabilitation in connection with Defendant's assault and battery of and use of excessive force against Plaintiff (Compl. ¶ 24, ¶ 29 ). Plaintiff also claimed additional damages as allowed under 42 U.S.C § 1983, the Fourth Amendment to the United States Constitution, and the Constitution of the State of Michigan, Article I, Section 2, including punitive and exemplary damages, costs, and attorney's fees, in connection with Defendant's use of excessive force against Plaintiff (Compl. ¶ 29). In determining whether Plaintiff's requested relief is appropriate, the Court may order as necessary Plaintiff to produce evidence documenting the nature and extent of his injuries and any related expenses.

At a hearing on June 23, 2015, Plaintiff described the nature of his injury and the harm it has caused. Plaintiff cited hospital records indicating that Plaintiff suffered entry and exit wounds on the interior portion of his right leg. Plaintiff also testified that he lost his job as a result of his injury[2] and that he has an outstanding hospital bill in the amount of approximately $800. As a result of his injury, Plaintiff experiences

---

[2] Plaintiff has since been able to secure employment and is currently working as a dishwasher.

continuing pain and discomfort, which he addresses occasionally by taking pain-relief medication. Plaintiff also suffers from intermittent numbness and tingling in his leg; cramping in his toes; and weakness in his legs such that Plaintiff feels tired after an eight-hour day of being on his feet and must frequently adjust positions to relieve the stress on his leg. Plaintiff's discomfort is particularly acute in the winter months when he must wait outside for the bus in the cold. Finally, whereas Plaintiff regularly played basketball and football before his injury, he has been unable to do so since.

The Court finds that Plaintiff's claims for pain and suffering and other damages support his request for relief in the amount of $75,000.

**IT IS ORDERED** that Plaintiff's Motion for Default Judgment **[Docket No. 7, filed May 27, 2015]** is **GRANTED.**

                                    S/Denise Page Hood
                                    Denise Page Hood
                                    United States District Judge

Dated: July 24, 2015

I hereby certify that a copy of the foregoing document was served upon counsel of record on July 24, 2015, by electronic and/or ordinary mail.

                                    S/LaShawn R. Saulsberry
                                    Case Manager